ANDERSON *v.* PARKER.

5-1825                                              323 S. W. 2d 414

Opinion delivered April 6, 1959.

[Rehearing denied May 18, 1959]

*B. Ball* and *Spencer & Spencer,* for appellant.

No brief filed for appellee.

GEORGE ROSE SMITH, J. In 1947 Nettie Hatridge executed a will leaving all her property to the appellant, Barney Anderson. In 1953 Mrs. Hatridge married the appellee, Doyle E. Parker. Upon the testatrix's death in 1957 Parker elected to take against the will, as it had been executed before his marriage to the decedent. Ark. Stats. 1947, § 60-501. In an appeal from the probate court we upheld Parker's claim to a curtesy interest in the estate. *Anderson* v. *Parker,* 229 Ark. 683, 317 S. W. 2d 721.

Parker's right to an allowance of curtesy is again the issue in this case, which began as a suit by Parker to obtain an accounting with reference to a partnership that formerly existed between Anderson and the late Mrs. Parker. By a cross-complaint Anderson asserted that in

about 1944 he and Mrs. Parker, who was then Mrs. Hatridge, entered into an oral contract by which she agreed to make a will leaving all her property to Anderson. It is Anderson's contention that Mrs. Hatridge was bound by this contract when she married Parker in 1953, and consequently Parker's claim to curtesy is subordinate to Anderson's right to specific performance of the asserted contract. The chancellor held that the proof fell short of establishing the existence of the contract, and the correctness of that finding is the only issue now presented.

The weight of the evidence supports the trial court's conclusion. It is true that the law recognizes the validity of an oral contract to make a will, but the proof of such an agreement must be clear and convincing. *Offord v. Agnew,* 214 Ark. 822, 218 S. W. 2d 370. We observed in that case that the plaintiff who succeeds in establishing such a contract has usually performed his part of the bargain at a sacrifice to himself and has usually rendered services not easily compensated in money. In many instances, probably in most instances, the consideration for the contract is the promisee's obligation to support his benefactor for the rest of his or her life.

In the case at bar the evidence does not leave us with an abiding conviction that the parties entered into a binding agreement. Anderson first met Mrs. Hatridge in 1944, when he rented a room in her home for a few months. It is quite evident that a warm friendship developed between Mrs. Hatridge, who had been recently widowed, and Mr. and Mrs. Anderson. The Andersons were quite attentive to Mrs. Hatridge for the rest of her life and especially during her last illness in 1957, which was long after her marriage to Parker. It is fair to add, however, that the evidence indicates that Mrs. Hatridge's substantial gifts of money to the Andersons exceeded the value of their gifts and services to her.

The only testimony about the terms of the supposed agreement comes from Anderson himself, whose statements cannot be regarded as undisputed. Anderson states that in 1944 or 1945 Mrs. Hatridge said that if the Andersons would "stand by her" and help her with

her affairs she would leave them everything she had at her death. This vague description of the agreement is not materially strengthened by the testimony of Mrs. Anderson, who merely quotes Mrs. Hatridge as having often said, "If you stay with me it's yours."

That the Andersons stood by Mrs. Hatridge and helped her with her affairs is shown clearly enough, but we are not convinced that they were under a binding contractual duty to do so. Mrs. Hatridge undoubtedly told the Andersons about the provisions of her will, by which everything was left to Anderson, and it is understandable that the Andersons were genuinely grateful and felt a strong moral obligation to reciprocate in any way they could. But it is quite another thing to say that Mrs. Hatridge irrevocably agreed to leave her entire estate to the Andersons, in return for their nebulous promise to stand by her in the future, and we are not persuaded that the proof clearly and convincingly establishes such a contract.

Affirmed.